IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELENA A. BELOV,<br>455 Main Street, PH2F<br>New York, NY 10044<br><br>          Plaintiff,<br><br>     v.<br><br>WORLD WILDLIFE FUND, INC.<br><br>SERVE: Corporation Service Corporation<br>          Registered Agent<br>          1090 Vermont Avenue, NW<br>          Washington, DC 20005<br><br>          Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:  Case No. _____<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

**COMPLAINT**

COMES NOW the plaintiff, Elena A. Belov ("Plaintiff" or "Ms. Belov"), by and through her undersigned counsel, Broderick C. Dunn, Esq., Philip C. Krone, Esq., and the law firm of Cook Craig & Francuzenko, PLLC, and in support of her Complaint against the defendant, World Wildlife Fund, Inc. ("Defendant" or "WWF"), states as follows:

**JURISDICTION AND VENUE**

1.      This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the Complaint alleges violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k) ("PDA"), and the Family Medical

1

Leave Act of 1993, 29 U.S.C. §§ 2601, *et seq.* ("FMLA"), because Defendant terminated Plaintiff based on her gender and in retaliation for engaging in protected activity.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Defendant resides in the District of Columbia.

## PARTIES

3. Plaintiff is a Caucasian female over the age of forty (40) and is a resident of the state of New York.

4. Defendant is an international non-governmental organization licensed to do business in the District of Columbia. WWF is the world's largest conservation organization and works in the field of wilderness preservation and the reduction of human impact on the environment.

## FACTUAL BACKGROUND

5. Plaintiff began working at WWF in November of 2012 as Defendant's Senior Shipping Officer for the U.S. Arctic Program.

6. While Plaintiff was technically a "limited term employee," Plaintiff's term was renewed nine times between November of 2012 and June of 2020. It was renewed so many times that such renewal was considered routine based on Plaintiff's excellent performance and the positions continued funding.

7. Plaintiff's supervisor at WWF was Margaret Williams ("Ms. Williams"), Managing Director of Defendant's Arctic Program.

8. Plaintiff received outstanding performance reviews in 2013, 2014, and 2015.

9. In April of 2016, Plaintiff gave birth to her first child. Plaintiff was initially afraid to ask for additional leave to bond with her infant because Ms. Williams expressed a negative

attitude towards employees taking time off. Moreover, Ms. Williams expressed a specific dislike regarding female employees taking maternity leave.

10. After experiencing significant breastfeeding and childcare issues, Plaintiff asked Ms. Williams if she could work part-time for a few months to address the issues. Ms. Williams told Plaintiff that if she could not work full time upon returning from her maternity leave, then "[Ms. Belov] should resign."

11. Plaintiff sought help from colleagues with WWF Russia including Victoria Elias, Ekaterina Khmeleva, Alexey Knizhnikov, and Alexander Moiseev, and Defendant finally allowed Plaintiff to work twenty-one (21) hours per week until she went back to full-time employment in 2017.

12. In the spring of 2018, Ms. Belov informed Ms. Williams that she was pregnant again and expecting to give birth in or around October of 2018. Ms. Williams reacted negatively about the impact that Plaintiff's maternity leave would have on Defendant despite the fact that the months of October through January are generally slower given the number of domestic and international holidays.

13. Plaintiff gave birth to her second child on October 19, 2018. She continued working on donor reports and other tasks during her maternity leave to appease Ms. Williams.

14. In December of 2018, it became apparent that Plaintiff's newborn daughter was suffering from serious health conditions that prevented her from gaining weight and which required surgical intervention.

15. Plaintiff emailed Ms. Williams several times in January of 2019 to request reasonable accommodations concerning her maternity leave. When Ms. Williams failed to even acknowledge Plaintiff's emails, Plaintiff had to involve Defendant's human resources department.

16. Only after Plaintiff alerted Defendant to New York State's Family and Medical Leave Act did Defendant allow Plaintiff to take an additional eight (8) weeks of maternity leave."

17. When Plaintiff returned to work full-time in April of 2019, Plaintiff remained her infant daughter's sole source of nutrition because health issues prevented her from being bottle fed.

18. Plaintiff could only travel for work if her daughter traveled with her. Despite this limitation, Ms. Williams tried to force Plaintiff to take several non-essential cross-country and international trips.

19. Ms. Williams only relented when Plaintiff involved Defendant's Vice President of Human Resources, Valerie Blain-Smith ("Ms. Blain-Smith") who facilitated a call between Ms. Williams and Plaintiff on June 12, 2019. During that call, Ms. Blain-Smith determined that none of the trips proposed by Ms. Williams were essential and that Defendant would revisit Plaintiff's travel restrictions every three (3) months.

20. From that phone call forward, Ms. Williams continued to retaliate against Plaintiff for being female, getting pregnant, taking leave and for having travel restrictions due to her daughter's health.

21. Ms. Williams subjected Plaintiff's work to increased scrutiny and supervision without subjecting similarly situated, non-female, non-breastfeeding employees to the same scrutiny. Ms. Williams' increased scrutiny also came despite the fact that Plaintiff continued to exceed Defendant's performance expectations in 2016, 2017, 2018, and 2019.

22. In October of 2019, Plaintiff planned a work trip to Iceland. When Ms. Williams heard that Plaintiff planned to bring her nursing infant along with her, Ms. Williams advised her

against doing so because her daughter's mere presence would interfere with Plaintiff's ability to "fully participate" in all of the events during the trip.

23. When Plaintiff responded that she had a legal right to nurse her daughter every three (3) to four (4) hours, Ms. Williams warned her not to use "legal language" with her.

24. Later in October of 2019, Ms. Williams attempted to force Plaintiff to travel to Alaska for a four (4) hour meeting which other out-of-state participants attended via Zoom. When Plaintiff sought the assistance of Defendant's human resources department regarding this blatant violation of company policy, Plaintiff's state and federal rights, and the parties limited travel agreement, Ms. Williams responded by falsely reporting issues concerning Plaintiff's job performance.

25. On April 22, 2020, Defendant informed Plaintiff that her position was not being renewed "due to lack of funding." Defendant terminated Plaintiff's employment on June 30, 2020.

26. Defendant's purported reason for terminating Plaintiff's employment was pretextual. Defendant's actions belie programing and financial logic because funding remained for Plaintiff's position despite the global pandemic and because Plaintiff was an essential part of Defendant's U.S. Arctic Program.

27. Defendant's termination of Plaintiff was due to a number of factors including Plaintiff's gender, Plaintiff's maternity leave, Plaintiff's complaints regarding Ms. Williams' discriminatory behavior and because Defendant feared Plaintiff could take maternity leave in the future.

28. As a result of Defendant's actions towards Plaintiff, Plaintiff has suffered damages including, but not limited to, lost wages, professional humiliation, sleeplessness, anxiety, and depression.

29. Plaintiff filed her Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission, Charge No. 570-2020-02253, on or about July 21, 2020.

30. Plaintiff received her Notice of Right to Sue on or about March 9, 2021.

## COUNT I

**(Sex and Pregnancy Discrimination- Wrongful Discharge and Disparate Treatment in Violation of Title VII)**

31. Plaintiff restates the allegations contained in paragraphs 1-30 of the Complaint as if fully set forth herein.

32. As a lactating female, Plaintiff is a member of a protected group.

33. Plaintiff suffered an adverse employment action when Defendant terminated her employment on June 30, 2020.

34. At the time of Plaintiff's termination, Plaintiff was performing her job at a level that met Defendant's legitimate expectations as evidenced by her superior performance reviews, lengthy tenure with Defendant, and the frequent renewals of her position's term.

35. Similarly situated non-lactating, non-female employees were treated more favorably than Plaintiff.

36. As a result of Defendant's actions, Plaintiff has suffered past and future wage loss, emotional distress, and physical distress from the cessation of her gainful employment with Defendant.

## COUNT II

**(Title VII and PDA Retaliation)**

37. Plaintiff restates the allegations contained in paragraphs 1-36 of the Complaint as if fully set forth herein.

38. Plaintiff engaged in protected activity under Title VII when she requested reasonable accommodations concerning maternity leave and reported Ms. Williams' discriminatory behavior towards her in January of 2019, June of 2019, and October of 2019.

39. Plaintiff's complaints about gender and pregnancy discrimination were a substantial and motivating factor in Defendant's decisions to take an adverse employment action against Defendant.

40. As a result of Defendant's actions, Plaintiff has suffered wage loss, emotional distress, and attorneys' fees.

## COUNT III

### (FMLA Retaliation)

41. Plaintiff restates the allegations contained in paragraphs 1-40 of the Complaint as if fully set forth herein.

42. Plaintiff engaged in protected activity when she notified her employer of her intention to take FMLA leave.

43. Defendant took an adverse employment action against Plaintiff when they terminated her based on her decision to take FMLA leave to care for her infant daughter.

44. Plaintiff's termination was causally connected to her intention to take FMLA leave as evidenced by Ms. Williams' comments about maternity leave and the decision to terminate Plaintiff's position shortly after she returned from her protected leave.

45. As a result of Defendant's conduct, Plaintiff has suffered lost back pay, lost front pay, liquidated damages, and attorneys' fees.

WHEREFORE, the plaintiff, Elena Belov, demands judgment against the defendant, World Wildlife Fund, Inc., as follows:

(a) For Count I, past and future lost wages in the amount of $1,000,000, punitive damages in the amount of $300,000, and compensatory damages in the amount of $300,000;

(b) For Count II, past and future lost wages in the amount of $1,000,000, punitive damages in the amount of $300,000, and compensatory damages in the amount of $300,000;

(c) For Count III, $1,000,000 in lost back pay and front pay and $1,000,000 in liquidated damages;

(d) Plaintiff's attorneys' fees as provided by Title VII, PDA, and FMLA;

(e) Pre-judgment interest, post-judgment interest and all other further relief that this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

ELENA BELOV
By Counsel

　　/s/ Broderick C. Dunn
Broderick C. Dunn, #VA74847
Cook Craig & Francuzenko, PLLC
3050 Chain Bridge Road, Suite 200
Fairfax, VA 22030
Phone (703) 865-7480
Fax (703) 434-3510
bdunn@cookcraig.com
*Counsel for Plaintiff*